UNITED STATES DISTRICT COURT    **CV 12 -    5272**
EASTERN DISTRICT OF NEW YORK
--------------------------------------- x ˣSUMMONS ISSUED

FRANCES HASSAN,

                                Plaintiff,    **COMPLAINT**

              -against-

THE CITY OF NEW YORK; P.O. LATORI; and
P.O. JOHN DOES # 1-5; the individual          ECF Case
defendant(s) sued individually and in
their official capacities,                    Jury Trial Demanded.

                                Defendants.   MATSUMOTO, J.
                                              POLLAK, M.J
--------------------------------------- x

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff
seeks relief for the violation of plaintiff's rights secured by
42 U.S.C. § 1983; and the First, Fourth, Sixth, and Fourteenth
Amendments to the United States Constitution, and the laws of
the State of New York.  Plaintiff's claims arise from incidents
that arose on or about July 29, 2011.  During the incidents, the
City of New York, and members of the New York City Police
Department ("NYPD") subjected plaintiff to, among other things:
unlawful search and seizure; false arrest; assault and battery;
unreasonable force; failure to intervene; retaliation;
implementation and continuation of an unlawful municipal policy,
practice, and custom; and respondeat superior liability.
Plaintiff seeks compensatory and punitive damages, declaratory

relief, an award of costs and attorney's fees, pursuant 42
U.S.C. § 1988, and such other and further relief as the Court
deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. §
1983, and the First, Fourth, Sixth, and Fourteenth Amendments to
the United States Constitution. Jurisdiction is conferred upon
this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and
1343.

3.    Plaintiff invokes the supplemental jurisdiction
of this Court pursuant to 28 U.S.C. § 1367 to hear and decide
claims arising under state law. Plaintiff's notice of claim was
duly filed on defendant City of New York within 90 days of the
incidents at issue, more than 30 days have elapsed since such
filing and the City of New York has refused to settle
plaintiff's claims. Moreover, this action has been filed within
one year and 90 days of the incidents. Plaintiff has satisfied
all conditions precedent for the filing of this action.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391
because some of the acts in question occurred in Kings County,
and the City of New York is subject to personal jurisdiction in
the Eastern District of New York.

2

## PARTIES

5.     Plaintiff Frances Hassan is a resident of the State of New York, Queens County, and Hispanic.

6.     At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.     At all times alleged herein, defendants P.O. Latori, and P.O. John Does # 1-5 were New York City Police Officers employed with the 90th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

8.     The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

### The Incident

9.     On July 29, 2011, in the vicinity of 140 Moore Street, Apt. 1H, Brooklyn, New York, and the 90th Precinct, Brooklyn, New York, several police officers operating from the 90th Precinct, including upon information and belief, defendants P.O. Latori, and P.O. John Does # 1-5, at times acting in concert, and at times acting independently, committed the following illegal acts against plaintiff.

3

10.    On July 29, 2011, at approximately 2:30 a.m., in the vicinity 140 Moore Street, Apt. 1H, Brooklyn, New York, P.O. Latori, and P.O. John Does # 1-5, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully arrested plaintiff.

11.    Frances had been at her parent's house and was outside of her parent's home looking for a cab to take her and her minor daughter home, when the police approached her and her daughter.

12.    The police asked Frances what she and her daughter were doing outside, and Frances told them that she was looking for a cab.

13.    The police asked Frances more questions about her daughter and let Frances' daughter sit in their patrol car.

14.    Their discussion ended without incident, and Frances and her daughter went back inside her parent's house.

15.    While inside, Frances called a car service.

16.    In time, Frances heard a knock on the front door.

17.    Frances opened the front door to see P.O. Latori and other officers.

18.    At the doorway, P.O. Latori and his fellow officers began harassing and questioning Frances.

4

19.    P.O. Latori and the officers asked her what she doing calling a cab.

20.    Frances told them it was none of their business, that she had done nothing wrong, and that she was calling for a cab to go home.

21.    But the police continued to harass Frances, so she shut the door and went about her business.

22.    Frances began gathering her things and took her daughter to the bathroom before their ride home.

23.    But the police would not stop, and they started knocking and banging on the front door.

24.    The police did not have permission to enter the apartment, had not witnessed any act rising to the level of an exigent circumstance that would justify entering the property without a warrant, and had not been called or asked to provide assistance to any individual inside the apartment.

25.    Once the police entered the property, Frances and her family were not free to disregard the individual defendants' questions, walk away or leave.

26.    By coming onto the property without a warrant or without exigent circumstances, the police violated clearly established law and plaintiff's civil rights.

5

27.   Frances' family questioned the police about the legality of their conduct, but they ignored them.

28.   In the absence of a warrant, the police lied, bullied and threatened their way into the apartment.

29.   The police were threatening and abusive in the extreme and would not take no for an answer.

30.   Once inside the police yelled: Where is she?

31.   Frances' sister asked: What do you want?

32.   Frances' mother was crying.

33.   The police came to the bathroom and banged on the door, demanding to be let in.

34.   At the time, Frances was helping her daughter use the toilet.

35.   The police broke open the bathroom door and knocked Frances to the floor, injuring her hand, arm, neck and back.

36.   The police twisted Frances's arms behind her back and placed handcuffs on her that cut into her wrists, causing her hands to go numb.

37.   The police then dragged Frances from her parent's home and also took her daughter from the apartment.

38.   The police put Frances in a police car and took her to the 90th Precinct for processing.

39.     The police refused to tell Frances why she had
been arrested.

40.     The police transported Frances to Central Booking
for arraignment.

41.     In order to cover up their illegal actions, the
defendant officers, pursuant to a conspiracy, initiated, and
falsely and maliciously told the Kings County District
Attorney's Office that the plaintiff had committed various
crimes, including disorderly conduct.

42.     The defendant officers made these false
allegations, despite the fact that they had no evidence that
plaintiff had committed a crime, to cover up their misconduct,
and to retaliate against plaintiff.

43.     However, as there was no basis to arrest the
plaintiff, much less prosecute her, the Kings County District
Attorney's Office declined to prosecute her, and the case
against her terminated in her favor, and she was released that
evening from Central Booking.

44.     In addition, the police also falsely reported
plaintiff to the City of New York's Administration for Children
Services, but the case was dismissed as unfounded.

**General Allegations**

45.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

46.    Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

58.    At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

59.    The defendants acted under pretense and color of state law and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

60.    As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological

pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

61.   Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

62.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

63.   Defendants unlawfully stopped and/or searched plaintiff without cause, a warrant, or consent.

63.   Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER STATE LAW)

64.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

65.   Defendants unlawfully stopped and/or searched plaintiff without cause, a warrant, or consent.

66.   Accordingly, defendants are liable to plaintiff for unlawful search and seizure under New York State law.

9

### THIRD CLAIM

#### (FALSE ARREST UNDER FEDERAL LAW)

67.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

68.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

69.    Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

### FOURTH CLAIM

#### (FALSE ARREST UNDER STATE LAW)

70.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

71.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

72.    Accordingly, defendants are liable to plaintiff for false arrest under New York State law.

## **FIFTH CLAIM**

### **(UNREASONABLE FORCE)**

73. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74. The individual defendants' use of force upon plaintiffs was objectively unreasonable.

75. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

76. Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

77. Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## **SIXTH CLAIM**

### **(ASSAULT)**

78. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

79. Among other things as described above, defendants' search and seizure, battery, false arrest, and

11

excessive use of force against plaintiff placed her in fear of imminent harmful and offensive physical contacts.

80.   Accordingly, defendants are liable to plaintiff under New York State law for assault.

## SEVENTH CLAIM

### (BATTERY)

81.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

82.   Among other things as described above, defendants' search and seizure, false arrest, and excessive use of force against plaintiff were illegal physical contacts.

83.   Accordingly, defendants are liable to plaintiff under New York State law for battery.

## EIGHTH CLAIM

### (FAILURE TO INTERVENE)

84.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85.   Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

86.   Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

12

## NINTH CLAIM

### (RETALIATION CLAIM)

87.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

88.    Plaintiff exercised free speech during the incident by, among other things, complaining about the individual defendants' unlawful acts.

89.    Plaintiff's use of free speech was a motivating factor in the individual defendants' decision to falsely arrest them.

90.    Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## TENTH CLAIM

### (MONELL CLAIM)

91.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

92.    Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

93.    Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs and policies against plaintiff: (1)

unlawfully stopping and questioning innocent persons; (2)

wrongfully arresting innocent persons; (3) using unreasonable

force on individuals; (4) fabricating evidence against innocent

persons; (5) unlawly entering homes; and (6) retaliating against

people who complain about police misconduct.

94. Upon information and belief, defendant City of

New York, at all relevant times, was aware that the defendants

were unfit officers who have previously committed the acts

alleged herein, have a propensity for unconstitutional conduct,

or have been inadequately trained.

95. Nevertheless, defendant City of New York

exercised deliberate indifference by failing to take remedial

action. The City failed to properly train, retrain, supervise,

discipline, and monitor the individual defendants and improperly

retained and utilized them. Moreover, upon information and

belief, defendant City of New York failed to adequately

investigate prior complaints filed against the individual

defendants.

96. Further, defendants City of New York was aware

prior to the incident that the individual defendants (in

continuation of its illegal custom, practice and/or policy)

would stop, arrest and prosecute innocent individuals, based on

pretexts and false evidence.

14

97.   The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the individual defendants' propensity to violate the rights of individuals.

98.   In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes. Officers have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault and domestic violence. In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison. In 2011, Brooklyn South narcotics officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and

performing illegal searches of vehicles and apartments. In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

99.   Additionally, the existence of the aforesaid unconstitutional customs and polices of profiling minorities, may be inferred from an analysis of the NYPD conducted by the New York Civil Liberties Union ("NYCLU"). The NYCLU's analysis revealed that more than 2 million innocent New Yorkers were subjected to police stops and street interrogations from 2004 through 2011, and that black and Latino communities continue to be the overwhelming target of these tactics.  Nearly nine out of 10 stopped-and-frisked New Yorkers have been completely innocent, according to the NYPD's own reports.

100.  In August 2009, Proffer Levine released a report entitled *The Epidemic of Pot Arrests in New York City*, which stated: Perhaps most appalling is who the police are arresting for marijuana possession.  United States government studies have consistently found that young whites use marijuana at higher rates than do young blacks or Latinos. But the NYPD has long arrested young blacks and Latinos for pot possession at much higher rates than whites. In 2008, blacks were about 26% of New

16

York City's population, but over 54% of the people arrested for pot possession. Latinos were about 27% of New Yorkers, but 33% of the pot arrestees. Whites were over 35% of the City's population, but less than 10% of the people arrested for possessing marijuana. In 2008, police arrested Latinos for pot possession at four times the rate of whites, and blacks at seven times the rate of whites.

101.    Furthermore, documented civilian complaints about officer misconduct show that African Americans are the most likely targets of abuse, but their complaints are largely ignored.  According to the City of New York's Civil Complaint Review Board's ("CCRB") Status Report, dated December and January 2010, in 2010 African Americans were overrepresented as alleged victims of police misconduct.  Although making up only 23% of New York City's population, they are 58.5% of the alleged victims in CCRB complaints.  On the other hand, whites and Asians were a disproportionately low percentage of alleged victims.

102.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

103. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

104. The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

### ELEVENTH CLAIM

### (RESPONDEAT SUPERIOR)

105. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

106. The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including falsely arresting, assaulting, and battering plaintiff.

107.   The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:   Brooklyn, New York
         October 16, 2012

MICHAEL O. HUESTON, ESQ.
*Attorney for Plaintiff*
16 Court Street, Suite 3301
Brooklyn, New York 11241
(718) 246-2900
mhueston@nyc.rr.com
By:
_____
MICHAEL O. HUESTON

19